UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA

In re                                                Case No. 08-10175-WRS
                                                     Chapter 12
JOSEPH D. SENN,

      Debtor

BLUE HORIZON OF NWF INC.,

      Plaintiff                                Adv. Pro. No. 08-1087-WRS

v.

JOSEPH D. SENN,

      Defendant

## MEMORANDUM DECISION

This Adversary Proceeding came before the Court for trial on November 17, 2009. Plaintiff Blue Horizon was present by its President Albert Qualls and its counsel William C. Carn, III. Defendant Joseph D. Senn was present in person and by counsel Cameron A. Metcalf.

## I. FACTS

This adversary proceeding concerns two written contracts entered into by the parties on July 26, 2004, and February 2, 2005. (Pl. Ex. 1 and 2). Under these contracts, Plaintiff Blue Horizon provided approximately $520,000 to finance the purchase of farm equipment to be used by Senn in his farming operation. The agreements in question are cast in terms of leases, however, it is apparent that their purpose was to finance the purchase of farm equipment by Senn. That is, Senn arranged for the purchase of the equipment and Blue Horizon provided the funds.

After Senn defaulted on his contractual obligations to Blue Horizon, the farm equipment was repossessed and sold, leaving a deficiency balance of $81,000.

Senn filed a petition in bankruptcy on February 2, 2008, pursuant to Chapter 12 of the Bankruptcy Code. (Case No. 08-10175, Doc. 1). On October 17, 2008, the Court confirmed Senn's Chapter 12 Plan. (Case No. 08-10175, Doc. 62). The Plan provides that unsecured creditors will paid a pro rata share of $87,500. (Case No. 08-10175, Doc. 61, p. 10).

Blue Horizon filed a timely complaint to determine whether the debt owed to it by Senn should be excepted from discharge on September 8, 2008. (Doc. 1).[1] The complaint is cast in two counts. In Count I Blue Horizon alleges promissory fraud, that Senn entered into this agreement intending not to pay, and in Count II, that Senn induced Blue Horizon by providing a false financial statement.

Addressing first the claim of promissory fraud, the Court recognizes that such claims are rarely proved by direct evidence. Rather, a claim of promissory fraud–that the debtor entered into an agreement with the intention of breaching–is almost always proved by circumstantial evidence. Yet, in this case there is practically no evidence which would support a finding of promissory fraud. Blue Horizon's President complained at trial that Senn made only a nominal payment on the contracts, using the leased equipment practically for free for more than a year. The July 26, 2004 contract did not call for the first payment until November 1, 2005. Blue Horizon recognized that Senn was "cash poor" at the time it entered into the contract because it

---

[1] The original bar date was June 2, 2008. (Case No. 08-10175, Doc. 7). Blue Horizon filed motions extending the bar date through September 23, 2008. (Case NO. 08-10175, Doc. 56).

was structured to allow Senn to harvest two crops before the first payment was to be made. This recognition of Senn's weak financial status undercuts the claim of promissory fraud.

Blue Horizon offered further evidence in support of its claim in the form of some undated, handwritten notes. (Pl. Ex. 5). It appears that the author of these notes had documented an effort to determine whether Blue Horizon was authorized to do business in the State of Alabama. Senn testified that the notes were made by Garth Lindsey, a lawyer from Elba, Alabama, who represented Senn in a civil action brought by Blue Horizon against Senn prior to his bankruptcy filing (Tr. Nov. 17, 2009, p. 23). Senn's Statement of Financial Affairs reports that Blue Horizon brought suit against Senn in the Circuit Court for Pike County, Alabama, under Case No. CV-06-31. (Case No. 08-10175, Doc. 23). The theory advanced by Blue Horizon was that Senn investigated Blue Horizon's corporate status at the time he entered into the contracts to determine whether it could lawfully bring suit against him under Alabama law. This investigation, they contend, shows that Senn intended to breach the contracts at the time he entered into them. The Court rejects this factual contention as unsupported by the evidence. It appears that one of Senn's lawyers was exercising due diligence in responding to Blue Horizon's suit, which necessarily took place long after the contract was entered into. Having considered the evidence on this point, the Court finds that Blue Horizon has failed to prove, with a preponderance of the evidence, its contention that Senn did not intend to honor his obligation to Blue Horizon at the time he entered into the contracts.

Blue Horizon's second claim, is that it was induced by way of a false financial statement to enter into the contract in question. Blue Horizon's President Albert Qualls testified that Senn

provided a false financial statement. (Doc. 26).[2] Senn testified that he provided annual financial statements to Troy Bank (Pl. Ex. 11-18), but denies that he gave a copy to Qualls. Senn speculates that Qualls may have obtained a copy from Troy Bank. While the evidence on this point conflicts, the Court finds that Senn provided Qualls a copy of the financial statement. (Doc. 26).

At trial, Qualls testified that the financial statement indicates that Senn and his wife together own land with a value of $500,000 and that the land in question is not encumbered with a lien. In fact, the land in question is titled in the name of Senn's wife alone. That is, Senn does not own an interest of record in the farm land in Banks, Alabama.

The evidence was conflicting as to whether the land was encumbered with a mortgage. Senn testified that it was not. (Transcript, Nov. 17, 2009, p. 20). Blue Horizon called Mark Jordan, a loan officer at Troy Bank, who was familiar with the Banks' dealings with Senn. Jordan testified that the debt owed to the bank was secured by a mortgage on the Banks farm land. (Tr., p. 80). Blue Horizon did not offer a copy of the mortgage into evidence, leaving the question as to whether there was in fact a mortgage unnecessarily cloudy. By his demeanor, Jordan appeared confident that he was correct on this question, however, it was troubling that a copy of the mortgage was not offered into evidence. That is, the existence or nonexistence of a mortgage is not usually resolved by way of a swearing contest between witnesses. The party asserting the existence of the mortgage usually produces a copy of the mortgage, taking the matter out of serious dispute. That this was not done here is troubling. Nevertheless, while the

---

[2] There was some confusion as to which was the Financial Statement relied up by Blue Horizone. As set forth in Plaintiff's unopposed Motion to Substitute, the correct Statement is attached to the motion. (Docs. 26, 29).

testimony is conflicting, the Court will find that the property in question is encumbered and that the financial statement was materially false in this regard.

The next factual issue whether Blue Horizon has carried its burden to show that Senn intended to deceive it with the financial statement. As set out above, Senn testified that the farm land was not encumbered and appeared to be sincere in his belief. The Court further notes that Senn is a high school graduate and has farmed his entire adult life. He did not have any training which would have aided in the preparation of a financial statement. In addition, the financial statement in question was prepared by Senn for Troy Bank at the bank's request. It would not be logical for Senn to intentionally misstate the existence of a Troy Bank mortgage on a financial statement given to Troy Bank. The Bank apparently accepted Senn's statement without objection. Having heard the testimony of witnesses, having considered the documentary evidence and in some instances the lack thereof, the Court finds that Senn did not intend to make a false statement, nor did he intend to deceive Blue Horizon.

Having found that Senn did not intend to deceive effectively ends this matter; however, the Court will nevertheless consider the question of reasonable reliance on the part of Blue Horizon. That is, Blue Horizon is required to prove, with a preponderance of the evidence, that it reasonably relied upon the financial statement. Again, Blue Horizon fails on this element. Had it thought the matter of the land, and whether it was encumbered important in its decision to do business with Senn, it could have easily searched the land title records and would have discovered the true state of affairs. Blue Horizon's President could easily have conducted the search himself, or hired it done for a nominal fee. Rather, Blue Horizon accepted the financial statement and did not do any due diligence work to determine whether it was accurate. Blue

Horizon's President Albert Qualls knew the financial statement was not prepared by an accountant and undoubtedly he knew that Senn did not have any specialized business training. Under these circumstances, it is not reasonable to expect that a financial statement prepared by Senn would be letter perfect, complying with all generally accepted accounting principles. Having considered the evidence, the Court finds that Blue Horizon has failed to prove that its reliance on the financial statement was reasonable.

## II. LAW

### A. Jurisdiction Burden of Proof

This is an adversary proceeding to determine whether a debt is excepted from the Debtor's discharge. 11 U.S.C. § 523(a)(2)(A), (B). This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. § 1334(b). This is a core proceeding. 28 U.S.C. 157(b)(2)(I).

Blue Horizon asserts two separate, but overlapping claims. In Count I, it alleges that the debt should be excepted from discharge pursuant to § 523(a)(1)(A)(fraud). In Count II, Blue Horizon alleges that it was induced by way of a false financial statement and that the debt should be excepted from discharge pursuant to § 523(a)(1)(B)(false financial statement). The Court will consider the claims separately.

Regardless of which provision of § 523(a) is applied, exceptions to discharge are strictly construed in favor of the debtor and the creditor bears the burden of proof, with a preponderance of the evidence, to show that an exception applies. Hope v. Walker (In re Walker), 48 F.3d 1161, 1164-65 (11th Cir. 1995); Schweig v. Hunter (In re Hunter), 780 F.2d 1577, 1579 (11th Cir.

1986); Regions Bank v. Faulk (In re Faulk), 2006 WL 1999131, *6 (Bankr. M.D. Ala. July 14, 2006)(Williams, J.); see also, Grogan v. Garner, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991)(resolving circuit split as to burden of proof, establishing preponderance standard).

### B. The Actual Fraud Claim (523(a)(1)(A))

The Bankruptcy Code provides an exception to the general rule of discharge in the case of debts arising out of fraud. Section 523(a)(2)(A) of the Bankruptcy Code provides, in part, that:

> (a) A discharge under section 727 . . . does not discharge an individual debtor from any debt–
>
> * * *
>
> (2) for money, property, services . . . to the extent obtained by–
>
> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting a debtor's or an insider's financial condition.

To prove a claim of fraud, the plaintiff must prove the following elements:

(1) the debtor made a false representation of a past or current material fact;

(2) with the intent to deceive the creditor;

(3) the creditor justifiably relied upon the representation;

(4) the creditor sustained loss as a proximate result of the representation.

St. Laurent v. Ambrose (In re St. Laurent), 991 F.2d 672, 676 (11th Cir. 1993); Capitol Chevrolet v. Bullock (In re Bullock), 217 B.R. 885, 888-89 (Bankr. M.D. Ala. 2004). There was no

-7-

significant evidence offered at trial concerning statements made by Senn, other than statements as to his financial condition. Perhaps one exception was Qualls' testimony that Senn has represented that the equipment would be new, when in fact some of the equipment was actually used. The Court does not credit that testimony. There is nothing in the agreement which indicated that the equipment was to be new and Blue Horizon did not monitor the purchase of the equipment to insure that it was proper. The Court finds that there were no false representations made by Senn, other than those which will be discussed in detail in Part II(C) below. All of the evidence presented at trial concerning statements made by Senn applied to his financial condition. Therefore, there is no evidence of any false statement made which would support a § 523(a)(1)(A) claim, rather the claim is one for promissory fraud.

Considering next Blue Horizon's claim of promissory fraud, the pertinent standard is set forth as follows:

> The only basis upon which one may recover for fraud, where the alleged fraud is predicated on a promise to perform or abstain from some act in the future is when the evidence shows that, at the time the promises of future action or abstention were made, the promisor had no intention of carry out the promises, but rather had a present intent to deceive.

Wade v. Chase Manhattan Mortgage Corp., 994 F.Supp. 1369, 1378 (N.D. Ala. 1997)(citing Kidder v. AmSouth Bank, 639 So.2d 1361 (Ala. 1994)); see also, In re Faulk, 2006 WL 1999131, *6 (rejecting Bank's claim that Debtor did not intend to use borrowed funds as promised, at the time he made the promise); Capitol Chevrolet v. Bullock (In re Bullock), 317 B.R. 885 (Bankr. M.D. Ala. 2004)(rejecting promissory fraud claim that Debtor intended not to honor post-dated

-8-

check at time she tendered it). As the Court has found that Blue Horizon has failed to prove that Senn did not intend to pay his debt at the time he entered into the contracts, its promissory fraud claim fails.

### C. False Financial Statement Claim (523(a)(1)(B))

The elements of a claim under § 523(a)(1)(B) are as follows:

> A discharge under section 727 . . . does not discharge an individual debtor from any debt–
>
> * * *
>
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by–
>
> * * *
>
> (B) use of a statement in writing–
>
>     (i) that is materially false;
>
>     (ii) respecting the debtor's or an insider's financial condition;
>
>     (iii) on which the creditor to whom the debtor is liable for such money, property, service, or credit reasonably relied; and
>
>     (iv) that the debtor caused to be made or published with the intent to deceive.

Considering the first two elements, that is the use of a statement in writing that is materially false, respecting a debtor's condition, the Court finds that Blue Horizon has established these elements. First, the financial statement was used by Senn in that it induced

Blue Horizon to enter into the equipment lease agreement. Second, the financial statement is materially false. The statement incorrectly indicates that the farm land in Banks, Alabama was jointly owned by the Debtor and his spouse, rather than solely by his wife, and that the land was unencumbered, when in fact it was encumbered by a mortgage. (Doc. 26).

The third element, that the creditor reasonably relied, is not established. Qualls testified at trial that Blue Horizon did not make any effort to verify whether this land was either owned by the Senn or encumbered. In Field v. Mans, 516 U.S. 59, 116 S.Ct. 437, 133 L.Ed.2d 351, (1995), the underlying Bankrutpcy Court decision had found that letters written by a debtor to a creditor as to the status of certain land were false. The Bankruptcy Court found that it was not reasonable to rely on the letters and that a search of the land records should have been made. The Supreme Court reversed, holding that the proper standard was justifiable reliance and not reasonable reliance. On remand, the Bankruptcy Court determined that the creditor's reliance was justifiable and held that the debt was not dischargeable. Field v. Mans, 200 B.R. 293 (Bankr. D.N.H. 1996), affirmed by 157 F.3d 35 (1st Cir. 1998)(reversing the 1st Cir. BAP and reinstating the decision of the Bankruptcy Court). While the procedural history in Field v. Mans, is complex, the central holding is not. Where a creditor is able to investigate the truth of a claim by resorting to property records but fails to do so, its reliance may have been, under the facts of that case justifiable, but it was not reasonable. Under these circumstances, a reasonably prudent person would have checked the land records and verified that the borrower had good title to the land and that it was unencumbered. Admittedly, the factual setting in Field v. Mans is considerably different than that here, the point remains that if the value of the land was so important to Blue Horizon, it could have easily verified the title to the land. Moreover, the evidence does not show

-10-

that Blue Horizon did anything to verify the accuracy of the financial statement. It accepted the statement without asking any questions or making any investigation to verify its accuracy.

While each case turns on its unique facts, a number of courts, when considering whether a reasonably prudent lender would rely on statements concerning title of real property without making a search of the property records, have found that such reliance is not reasonable. AAFCOR, LLC v. Shelton (In re Shelton), 2009 WL 3757410 (Bankr. N.D. Ala. Nov. 4, 2009)(reliance on statement as to title to land not reasonable where search of records would have shown true ownership and where lender had other indicia that debtor's statement was false); McMaster v. Whitenack, 235 B.R. 819, 826-27 (Bankr. D.S.C. 1998)(finding that law firm's reliance on financial statement as to existence of second mortgage not reasonable where it failed to search property records); Security Title & Guaranty Company v. Stivers (In re Stivers), 84 B.R. 852, 854 (Bankr. S.D. Fla. 1988)(finding that reliance on debtor's statement that third mortgage had been paid off not reasonable inasmuch as title search would have shown that it was not); Lisk v. Criswell (In re Criswell), 52 B.R. 184, 196 (Bankr. E.D. Va. 1985)(finding that reliance on warranty deed not reasonable where property title search would have disclosed deed of trust); Simmons v. Landon (In re Landon), 37 B.R. 568 (Bankr. N.D. Ohio 1984)(finding that reliance on statement as to existence on second mortgage not reasonable where purchaser did not conduct search of property records); see also, Eugene Parks Law Corporation Defined Benefit Pension Plan v. Kirsh (In re Kirsh), 973 F.2d 1454, 1461 (9th Cir. 1992)(applying lower justifiable reliance standard, affirmed bankruptcy court finding that reliance on statement as to status of title not justifiable where title report would have shown true status); cf. Byrd v. Bank of Mississippi, 207 B.R. 131, 137 (S.D. Miss. 1997)(affirming decision of bankruptcy court where

bank who lent money to debtor on an unsecured basis relied on financial statement as to existence of assets reasonable, without title search, where loan to debtor was unsecured and where financial statement reported more than a $400,000 net worth); <u>Commonwealth Land Title Insurance Company v. Homer (In re Homer)</u>, 168 B.R. 790, 801-04 (Bankr. N.D. Ga. 1994)(reliance on statement from borrower of long standing reasonable where lenders search included search of property index, but not plaintiff index of lawsuits or lis pendens).

The fourth element is whether the debtor had the intent to deceive. The Court has found in Part I above, that Blue Horizon failed to prove intent. The question as to title to the land, and whether it was encumbered by a mortgage were misstated by Senn on a financial statement given to Troy Bank. It would be wholly illogical for Senn to intentionally misrepresent the fact that land is encumbered to the bank that holds the mortgage.

### III.  CONCLUSION

After hearing evidence, the Court finds that Plaintiff Blue Horizon fails on both counts. First, it failed to carry its burden of proof on its promissory fraud claim. Second, on its false financial statement claim, the Court finds that Blue Horizon failed on two of the four requisite elements. While it provided that a statement was given and that it was false in two material

respects, it failed on the elements of reasonable reliance and intent. The Court will, by way of a separate document, dismiss the complaint.

Done this 11th day of February, 2010.

/s/ William R. Sawyer
United States Bankruptcy Judge

c: William C. Carn III, Attorney for Plaintiff
   Cameron A. Metcalf, Attorney for Defendant